IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULLA LUNDGREN, dba A STEP FORWARD SHOES, | No. C 11-00758 CW |
| Plaintiff, | ORDER GRANTING BANK OF AMERICA'S SECOND MOTION TO DISMISS PART OF PLAINTIFF'S CLAIMS (Docket No. 30) |
| v. | |
| BANK OF AMERICA, N.A., a National Banking Association; BANK OF AMERICA CORPORATION, a Delaware Corporation, | |
| Defendants. | |

Defendants Bank of America, N.A. and Bank of America Corporation (collectively, Bank of America) move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Ulla Lundgren's first claim in her First Amended Complaint (1AC) as to all forged checks which were furnished and reported in a bank statement prior to December 30, 2009, her second claim as to all checks negligently deposited by Bank of America where the claim accrued prior to December 30, 2007, and her third claim for conversion as to all checked deposited prior to December 30, 2007. Docket No. 30. Lundgren opposes the motion. Having considered all of the parties' submissions, the Court grants Bank of America's motion to dismiss these bases for Lundgren's claims. Docket No. 30.

United States District Court
For the Northern District of California

BACKGROUND

Lundgren has filed the present lawsuit against Bank of America to recover funds lost as a result of checks prepared and deposited by her former bookkeeper, Catherine Bullard.  On October 4, 2011, the Court granted in part Bank of America's first motion to dismiss which asserted that Lundgren's claims were largely time-barred.  The order also granted Lundgren's unopposed request for leave to amend the complaint to allege a claim for conversion, and set a schedule for Defendant to answer or file a second motion to dismiss.

On October 11, 2011, Lundgren filed her 1AC.  The 1AC included, in addition to a claim for conversion, new allegations that Doris Gaddis, a representative of Bank of America, through misrepresentations and intimidation, led Lundgren to believe that Bank of America could not be held liable for any loss resulting from the checks Bullard wrote and deposited wrongfully.  Accordingly, Lundgren now claims that Bank of America should be equitably estopped from asserting the statute of limitations against her claims and that the limitations period should be tolled in her favor.  Bank of America argues that the 1AC insufficiently supports her reliance on equitable estoppel and tolling of the limitations periods.  In addition, Bank of America argues that Lundgren's new claim for conversion is subject to a three year limitations period, but does not otherwise argue that the claim has been insufficiently alleged.

1   The 1AC alleges the following with regard to Gaddis' conduct.

2   a. On or about December 10, 2008, Plaintiff reported to
3      defendant BANK certain checks having been forged by
       Bullard, but was thereafter told by a representative
4      of BANK, namely Doris Gaddis, that BANK would not
       reimburse Plaintiff beyond $2,300 in claimed losses,
5      and, further in a letter dated January 5, 2009 by
       Doris Gaddis on behalf of BANK to the effect that
6      "the applicable law provides that an employer who
       has entrusted an employee with responsibility over
7      their accounts, and has failed to exercise care in
       overseeing the employee, is responsible for any loss
8      caused by their negligence."

9   b. At or about the same time, Ms. Gaddis verbally
10     ridiculed Plaintiff for not seeing what was
       happening with her employee, and that it was not
11     BANK's fault, but, rather, Plaintiff's fault for not
       discovering that Ms. Bullard was forging checks and
12     depositing funds into her ATM account with forged
       signatures and without endorsements, and that it
13     would be fruitless for Plaintiff to make further
       claims against BANK in view of the (misstated) rule
14     of law as it applies to forgeries and missing
15     indorsements.

16  c. By virtue of the foregoing actions and statements
17     made by BANK's employee, Ms. Doris Gaddis,
       commencing on or about January 5, 2009, Plaintiff
18     was induced to believe that she had no claim against
       BANK, that it would be fruitless for her to pursue
19     the same and, based on the tone of voice and
       attitude Ms. Gaddis displayed on the telephone,
20     Plaintiff was intimidated by Ms. Gaddis into
       believing that BANK had no responsibility to her as
21     its depositor for the forgeries by Bullard, and,
       accordingly, Plaintiff did not file her complaint
22     until December 30, 2010, after she was encouraged by
       friends to seek legal counsel.
23

24  1AC at ¶ 7.a-c.

25      Lundgren alleges that Gaddis made "material
26  misrepresentations of the law," and that Gaddis' statements were
27  made willfully to discourage her from pursuing her legal rights.
28

3

United States District Court
For the Northern District of California

1AC at ¶¶ 7.d. and 8.   Lundgren claims that "at the time the foreground statements were made by Ms. Gaddis . . . she and the BANK knew or had reason to know or suspect that Bullard had not only deposited hundreds of thousands of dollars into her own account from the account of Lundgren, and that the checks had been deposited going back as far as January 2003, but, also, that nearly all of the checks failed to provide an endorsement from the named payee."   1AC at ¶ 7.e.   The 1AC does not allege any further details regarding the precise material misrepresentations or the circumstances in which the misrepresentations were communicated orally and in writing.

After the parties completed their briefing in connection with the present motion, Lundgren filed five exhibits to her First Amended Complaint.   Docket No. 34.   The exhibits consist of five letters from Bank of America.   The earliest letter, dated January 5, 2009 and signed by Doris Gaddis, pertains to Claim Number 05DEC2008-424428.   It states,

> Dear ULLA LUNDGREN:
>
> We have completed our research of the fraud claim you recently reported to Bank of America.   As a result of our research, we have determined that we are unable to honor the claim for the following reason:
>
> The applicable law provides that an employer who has entrusted an employee with responsibility over their accounts, and has failed to exercise care in overseeing the employee, is responsible for any loss caused by their negligence.
>
> Payee on checks ( Cathy Bullard

4

**United States District Court**
For the Northern District of California

> If you wish to discuss this matter further, please call me at . . .

Ex. 1.

The next letter, dated February 19, 2009 and signed by Theresa Seals, pertains to Claim Number 18FEB2009-500350.  It states in relevant part,

> We have completed our research of the fraud claim you recently reported to Bank of America.  As a result of our research, we have determined that we are unable to honor the claim for the following reason:
>
> Under our contract with you, as stated in the FACTS Disclosure and Agreement and as permitted by the Uniform Commercial Code, a claim for a forged maker's signature must be reported within sixty (60) days of the date of the account statement on which the check appears.

Ex. 2.

A third letter from Bank of America to Lundgren, dated April 16, 2009 and signed by Laura White, concerned a claim submitted on March 9, 2009.  Ex. 3.  The claim related to four invalid checks negotiated between May 28, 2009 and July 16, 2008, apparently with unauthorized signatures.  The letter acknowledged Lundgren's belief that the wrongdoer may have been stealing funds since 2003. Bank of America informed Lundgren that it had uncovered seven additional fraudulent checks negotiated between January 15, 2008 and March 6, 2008, totaling $4,633.17.

As quoted above, Bank of America stated that the claim was governed by the California Uniform Commercial Code, and the terms and conditions of its agreement with Lundgren.  The letter

referred Lundgren to the applicable provision of the agreement, which stated that, except as otherwise expressly provided elsewhere in the agreement, if she failed to notify Bank of America in writing of suspected problems or unauthorized transactions within sixty days after Bank of America made her statement or items available to her, she agreed that she may not make a claim against Bank of America related to the unreported problems or unauthorized transactions, regardless of the care or lack of care the Bank may have exercised in handling her account, and she may not bring a legal proceeding or action against Bank of America to recover any amount alleged to have been paid out improperly from her account.  The letter also advised Lundgren of the same-wrongdoer rule under the Uniform Commercial Code.[1] According to Bank of America's explanation, if the customer fails to report any unauthorized items to the bank within thirty days after the statement listing such items was made available by the bank, the customer may not assert the unauthorized signature or alteration against the bank by the same-wrongdoer on any subsequent items paid in good faith by the bank more than thirty days after the statement containing the first item was made available to the customer.

The letter concluded by informing Lundgren that her claim for items appearing on statements prior to January 9, 2009 was denied

---

[1] The same-wrongdoer rule is addressed in California Uniform Commercial Code section 4406(d)(2).

under the Uniform Commercial Code and the terms of the Deposit Agreement, and that her claim for items posted after March 3, 2008 was denied based on the same-wrongdoer rule.

Lundgren submits, as Exhibit Four, the first page of a January 23, 2009 letter from Bank of America.  In the letter, a Customer Advocate in the Offices of the Chairman and CEO summarized her findings concerning eleven claims that Lundgren submitted to Bank of America.  The Advocate stated that claim 05dec2009-424428[2] was opened as a forged maker claim for a total of seven checks, but Gaddis denied the claim because the funds were owed to the payee, Lundgren's bookkeeper, Bullard, and, thus, the claim concerned a civil matter between Lundgren and Bullard. The Advocate noted two different claims for the payment of checks deposited without endorsements and indicated that the claims were paid and Lundgren's account credited.  Finally, the Advocate noted that Bank of America denied as untimely Lundgren's 11feb2009-494167 claim for forged checks, and denied several other claims as untimely or barred by the same-wrongdoer rule.  The Advocate affirmed the findings and denied further reimbursements.

---

[2] The Advocate referred to claim 05dec2009-424428, but the correct claim number is 05DEC2008-424428, as evidenced by the date of the Advocate's own letter and Gaddis' January 5, 2009 letter.

United States District Court
For the Northern District of California

     Lundgren received another letter from Bank of America on

October 7, 2010.  In this letter, a Customer Advocate[3] in the

Offices of the Chairman and CEO responded to an inquiry that

Lundgren originally submitted to the Office of the Comptroller of

the Currency, but which was forwarded to Bank of America.  Ex. 5.

The letter referred to prior correspondence, and directed Lundgren

to relevant portions of the deposit agreement.  The letter

suggested that Lundgren pursue recovery of the funds from Bullard.

                            LEGAL STANDARD

     A complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a).  On a motion to dismiss under Rule 12(b)(6) for

failure to state a claim, dismissal is appropriate only when the

complaint does not give the defendant fair notice of a legally

cognizable claim and the grounds on which it rests.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering

whether the complaint is sufficient to state a claim, the court

will take all material allegations as true and construe them in

the light most favorable to the plaintiff.  NL Indus., Inc. v.

Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this

principle is inapplicable to legal conclusions; "threadbare

recitals of the elements of a cause of action, supported by mere

_____

     [3] Because the signature pages for the letters in Exhibits
Four and Five were omitted, it is not evident whether the Customer
Advocate in both letters was the same individual.

conclusory statements," are not taken as true.  Ashcroft v. Iqbal,
129 S.Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Equitable Estoppel and Tolling

Bank of America argues that Lundgren has failed to allege grounds for equitable estoppel of its defense based on the statutes of limitations, or grounds for tolling the limitations period.  Bank of America contends that Lundgren may not rely on estoppel or tolling because the 1AC alleges that bank employees made misstatements of law, rather than misstatements of fact.

At the outset, the Court notes that equitable tolling is distinct from equitable estoppel in that the former generally focuses on the plaintiff's excusable ignorance of the limitations period and the lack of prejudice to the defendant, whereas the latter turns on misconduct by the defendant.  Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir. 1981).  Because Lundgren alleges misconduct by Bank of America, rather than her own excusable ignorance, the Court addresses whether the doctrine of equitable estoppel applies.

In response to Bank of America's argument, Lundgren cites John R. v. Oakland Unified School Dist., 48 Cal. 3d 438 (1989).  There, the court stated, "It is well settled that a public entity may be estopped from asserting the limitations of the claims where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act."  Id. at 445.  The case

9

further explained, "Estoppel most commonly results from misleading statements about the need for or advisability of a claim; actual fraud or the intent to mislead is not essential." Id. John R. did not specifically address misstatements of law or limit equitable estoppel to misstatements of fact. Rather, the principal issue involved whether a school district should be estopped from asserting a defense based on the limitations period where the teacher accused of molesting the plaintiff-student allegedly threatened to retaliate against the student if he complained about the abuse. Id. at 442, 445-46. The present case is readily distinguishable on the basis of the facts alleged. Lundgren has not alleged similar coercive conduct by Bank of America representatives.

Other cases cited by Lundgren are inapposite for the same reasons. See e.g., Doe v. Bakersfield City School Dist., 136 Cal. App. 4th 556, 573-74 (2006) (addressing equitable tolling in the context of a civil suit arising from sexual abuse by a teacher, where the teacher threatened to retaliate if the student complained); V.C. v. Los Angeles Unified School Dist., 139 Cal. App. 4th 499 (2006) (same); Ateeq v. Najor, 15 Cal. App. 4th 1351 (1993) (affirming the application of equitable estoppel following a jury finding that defendant threatened to have plaintiff

deported if he contested any attempted accounting of their business partnership).[4]

_Vu v. Prudential Property & Casualty Insurance Company_, 26 Cal. 4th 1142, 1152 (2001), a case upon which Bank of America relies, supports its contention that a misrepresentation of law, as opposed to fact, does not justify equitable estoppel. The case, however, was principally concerned with a lawsuit by an insured against his insurer. _Vu_ rejected the insured's argument that a denial of coverage provides grounds for estopping an insurance company from raising a defense based on the statute of limitations. Nevertheless, the court recognized that a property

---

[4] Plaintiff also cites a series of cases that address the duty of a bank to a depositor, but do not address the circumstances in which a bank may be estopped from asserting a statute of limitations defense. In _Das v. Bank of America_, 186 Cal. App. 4th 727 (2010), the plaintiff failed to state a claim for breach of a fiduciary duty or negligence. The court reasoned that the relationship between a depositor and a depositary bank is not fiduciary in nature, and no allegations indicated that the bank discharged its contractual duties in an unreasonable manner or that it knew that the plaintiff was a victim of an illegal scam. _Id._ at 741-42. _Murray v. Bank of America_, 580 S.E. 2d 194, 197-98 (S.C. App. 2003), affirmed that a duty of care arose between the plaintiff, a bank customer, and the defendant bank, such that the trial court did not err in entering a directed verdict in her favor on her claim for negligence. After the plaintiff discovered that an imposter had fraudulently opened a checking account in her name at the bank, she met with a vice president of the bank who assured her that the account would be closed. However, the account remained open for another month and she was arrested for fraudulent checks that were written on the account. Likewise, _Patrick v. Union State Bank_, 681 So. 2d 1364, 1371 (Ala. 1996), held that a bank owes a duty of care to ensure that the person opening an account and to whom checks are given is not an imposter. Contrary to Plaintiff's argument, these cases do not establish that Bank of America owed her a duty to refrain from misstatements regarding the viability of her claim against the Bank.

United States District Court
For the Northern District of California

insurer's incorrect factual representation as to the amount of loss, if reasonably relied upon by the insured, could, under certain circumstances, provide grounds for equitable estoppel. Id. at 1152-53.

The Ninth Circuit has required plaintiffs in diversity actions to plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure the grounds for equitable estoppel of a statute of limitations defense when the asserted basis for equitable estoppel sounds in fraud.  Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 990-92 (9th Cir. 2006) (citing cases involving allegations of fraudulent concealment and holding that the statute of limitations would not be tolled based on plaintiff's allegation of a civil conspiracy because the conspiracy was not alleged with particularity in the complaint).[5] In the present case, the 1AC does not expressly allege any material misstatements of fact that Bank of America purportedly made through Gaddis or other representatives.  Nor does the 1AC identify what statements in the accompanying letters were material misstatements of fact.  No obvious material misstatements of fact

---

[5] Because this is a diversity action and there is no apparent conflict between California and federal law, Rule 9 provides the applicable standard to determine the sufficiency of Lundgren's pleading with respect to equitable estoppel.  Wasco, 435 F.3d at 990 (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)); cf. Ateeq, 15 Cal. App. 4th at 1358 ("If the facts alleged in Ateeq's complaint clearly show the statue of limitations has run, then he may be required to affirmatively and specifically plead facts supporting estoppel of the defense of the statute of limitations.")

appear on the face of the letters.  Thus, Lundgren has failed to plead facts sufficient to support her contention that Bank of America should be estopped from asserting its statute of limitations defenses.

Lundgren's most specific contention, made in her opposition, is that Bank of America led her to believe that she could not hold it liable for fraudulent checks cashed without an endorsement or with forged signatures.  However, these asserted misrepresentations are representations of law, not of fact. Furthermore, nothing in the letters suggests that Bank of America misrepresented that it could never be liable for checks deposited without endorsements.

Bank of America's motion to dismiss is warranted to the extent that it argues that Lundgren has not adequately asserted equitable estoppel against the Bank's statute of limitations defenses.  Because Lundgren has already amended her complaint twice, and it does not appear that she could further plead specific misrepresentations of fact or other misconduct that justify equitable estoppel, the Court declines to grant leave to amend.

II. Timeliness of Lundgren's Conversion Claim

Bank of America also argues that Lundgren's claim for conversion is time-barred in part under the three year statute of limitations period established by California Uniform Commercial Code section 3318(g).  Lundgren does not dispute that section

13

3318(g) applies to her conversion claim.   Rather, Lundgren asserts that she has alleged grounds to estop Bank of America from relying on a statute of limitations defense, as of January 5, 2009, the date when the Bank purportedly misled her to believe that it could not be held liable for the checks deposited without endorsements or the checks deposited with forged signatures.   However, again, there is no apparent material misrepresentation of fact that is sufficient to justify equitable estoppel.   Therefore, Bank of America's motion to dismiss in part Lundgren's claim for conversion as time-barred under section 3318(g) is granted.

CONCLUSION

The Court grants Bank of America's motion to dismiss Lundgren's claims to the extent they are based on transactions barred by the statute of limitations, in spite of her allegations that she is entitled to equitable estoppel on the grounds that the Bank engaged in fraudulent concealment.   In addition, the Court grants Bank of America's motion to dismiss Lundgren's claim for conversion to the extent that it is based on transactions that are time-barred under section 3318(g).

In light of the untimeliness of certain claims by Lundgren, it is possible that the value of her claims does not satisfy the amount in controversy required for a federal diversity action.   If this is the case, the parties may stipulate to remand the case to state court.   The parties shall appear for an April 11, 2012 case management conference at 2:00 pm.   In the parties' joint case

14

United States District Court
For the Northern District of California

management statement, the parties shall state their positions with respect to the amount in controversy and the propriety of remand to state court.  In addition, the parties shall indicate whether, if the case remains in federal court, they both consent to a magistrate judge to preside over the case.

IT IS SO ORDERED.

Dated: 3/19/2012

CLAUDIA WILKEN
United States District Judge